FISHER *v.* BERNARD

1. JURY—PRIVATE COMMUNICATIONS—PREJUDICE.
   Private communications between court and jury are improper but such communications will not nullify a verdict unless prejudice results to a party.

2. TRIAL—JURY—NEIGHBOR—PREJUDICE.
   Trial court did not commit prejudicial error in failing to notify counsel that a juror during trial had advised the court that he was plaintiff's neighbor where plaintiff did not show that she was actually prejudiced, that she was personally acquainted with that juror, or that plaintiff could have challenged for cause simply because that juror was a neighbor.

3. WITNESSES — EXPERT WITNESSES — MEDICAL WITNESSES — TEXTBOOK—ADMISSIBILITY.
   A textbook referred to by a medical witness as his authority may be used to contradict him.

4. TRIAL—TACTICS—OBJECTIONS—INSTRUCTIONS TO JURY.
   Aggressive trial tactics of defense counsel did not merit consideration on appeal where the trial court sustained plaintiff's objections to those tactics, and gave cautionary instructions, approved by plaintiff, to the jury regarding the language used by defense counsel.

5. WITNESSES—CROSS-EXAMINATION—PRINCIPAL AND AGENT.
   Denial of plaintiff's request to cross-examine another physician as an agent of defendant physician was not error where no

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 53 Am Jur, Trial § 904.
   Prejudicial effect, in civil case, of communications between court officials or attendants and jurors. 41 ALR2d 288.
[2] 47 Am Jur 2d, Jury § 321 *et seq.*
[3] 31 Am Jur 2d, Expert and Opinion Evidence § 67.
[4] 53 Am Jur, Trial § 506.
[5] 53 Am Jur, Witnesses § 609 *et seq.*

agency relationship between the two physicians was established and the physician-witness had acted as a consultant to defendant but was not under defendant's direction or control.

Appeal from Genesee, John W. Baker, J. Submitted Division 2 November 12, 1969, at Lansing. (Docket No. 4,492.)     Decided February 3, 1970. Leave to appeal granted September 23, 1970.     384 Mich 759.

Complaint by Doreen Fisher against Allen S. Bernard and the Flint Osteopathic Hospital, a Michigan corporation, for malpractice.     Verdict and judgment for defendants.     Plaintiff appeals.     Affirmed.

*Robert A. Grimes* and *van Benschoten & van Benschoten,* for plaintiff.

*Feikens, Dice, Sweeney & Sullivan,* for defendants.

Before: FITZGERALD, P. J., and T. M. BURNS and DANHOF, JJ.

DANHOF, J. This is a case of alleged malpractice. On August 26, 1962, plaintiff was struck in the knee by a metal object which had been hit and thrown off by a power lawnmower operated by her husband. She was taken to defendant hospital where the laceration was cleaned, sutured, and bandaged by an intern working with a general surgical resident physician.

During the following ten days plaintiff suffered swelling in her knee and complained of much pain. On several occasions she sought medical treatment from both defendant Bernard, her family doctor, and defendant Flint Osteopathic Hospital.     Plaintiff was admitted to the defendant hospital on September 3, 1962, where it was discovered two days

later that her knee joint was infected. While hospitalized, plaintiff was treated with antibiotics and physiotherapy. After three weeks in defendant hospital, plaintiff transferred to the University of Michigan Hospital at Ann Arbor where surgery was performed twice upon her knee and additional treatment was provided. As a result of the infection in her knee, plaintiff suffers permanent disability.

Plaintiff began this action against the present defendants and several others, no longer parties to the suit, alleging that their negligent treatment of her had resulted in her crippled condition. Following a jury trial, a verdict of no cause of action was returned for defendants. Plaintiff's motion for a new trial was denied and she has appealed.

Plaintiff contends that the trial court committed prejudicial error by failing to notify counsel that one of the jurors had advised the court during the trial that he was a neighbor of the plaintiff.

Plaintiff has relied on *DeCorte* v. *New York Central Railroad Company* (1966), 377 Mich 317. However, it is distinguishable on the facts from the instant case. It involved the association of a circuit court officer with jurors both in and out of the courtroom which created the opportunity to influence their decisions.

More in point are *People* v. *Kasem* (1925), 230 Mich 278, and *Citizens Commercial & Savings Bank* v. *Engberg* (1968), 15 Mich App 438. In the *Kasem* case the trial judge had eaten at a restaurant at the same table with the jurors. The court said,

"While there is practical unanimity in the opinion of the courts that private communications between the court and the jury are improper, there is some conflict as to whether such action will nullify the verdict. We think the better holding, and that supported by the weight of authority, is that there

is no presumption of a violation of duty on the part of the court, and that to constitute reversible error it must be made to appear that prejudice to the defendant resulted therefrom."

In the *Engberg* case a juror had untruthfully answered some questions on the *voir dire* questionnaire. The court said,

"However, upon discovery of a juror's false statements after a trial and verdict, a moving party must present to the court something more than the mere fact of the falsity of the answers. There must either be a showing of actual prejudice (see *People* v. *Schram* [1966], 378 Mich 145) or it must be established to the satisfaction of the trial court that the moving party would have successfully challenged for cause or otherwise dismissed the juror in question had the truth been revealed prior to trial."

In this case plaintiff has made no showing of actual prejudice or that she could have successfully challenged for cause simply because one of the jurors was a neighbor. Plaintiff does not contend that she and the juror in question were personally acquainted. Obviously, a neighbor could be favorably disposed, unfavorably disposed, or impartial. It may well have been a trial tactic of plaintiff's counsel to accept the juror, hoping he would be favorably inclined towards plaintiff. See *People* v. *McKee* (1967), 7 Mich App 296, *leave to appeal denied* 379 Mich 785. We hold that the trial court did not commit prejudicial error when it failed to notify counsel that one of the jurors had advised him during the trial that he was a neighbor of the plaintiff.

Plaintiff's second argument on appeal constitutes an attack upon the "Michigan rule" as expressed in *DeHaan* v. *Winter* (1932), 258 Mich 293, and *DeHaan* v. *Winter* (1933), 262 Mich 192. The rule as stated therein is:

"If a medical witness refers to a textbook as his authority, then the book referred to may be used to contradict him." (258 Mich 299.)

The reason stated for the rule is:

"that the attempt is to discredit the testimony of the witness by 'hearsay testimony of the written or spoken opinions of other persons, whom the jury have no means of examining as to their learning, their honesty, or their sources of special knowledge' (citation omitted), which attempt can be justified on neither principle nor difficulty of cross-examination." (262 Mich 197.)

In discussing the question whether, and in what manner and to what extent, learned treatises may be used in the cross-examination of an expert witness, four lines of authority may be distinguished. 60 ALR2d 71, §§ 1, 2, p 79. The rule expressed in the *DeHaan* cases is the most restrictive of the four viewpoints.

Plaintiff does not contend that the trial court failed to follow the Michigan authority. Rather, plaintiff argues that the Michigan rule is unsupportable on the basis of justice or logic, and that the modern tendency is towards a less restrictive rule on the use of textbooks in cross-examining expert witnesses.

Even if we agreed with the plaintiff, she has not cited anything in subsequent opinions of the Michigan Supreme Court that would indicate an intention to modify the rule set forth in the *DeHaan* cases. Therefore, we hold that the trial court acted correctly in continuing to apply it.

The third issue concerns defendants' allegedly improper trial tactics and final argument. After reviewing the lengthy trial transcript, it is clear this lawsuit was aggressively tried. The specific language of defendants' counsel objected to on appeal

was objected to at the trial, and the objections were sustained. Later the court gave cautionary instructions to the jury regarding the language involved, and plaintiff's counsel indicated satisfaction with that portion of the instructions. Obviously, there is no merit in plaintiff's position on this issue as the trial court's rulings and instructions were in her favor.

Finally, plaintiff claims the trial court erred in refusing her the right to cross-examine Dr. Derderian as an agent of defendant Dr. Bernard, CLS 1961, § 600.2161 (Stat Ann 1962 Rev § 27A.2161). The decision on this issue turns on whether plaintiff established an agency relationship between the two doctors. We hold that she did not. The testimony was that Dr. Derderian was acting as a consultant to Dr. Bernard. This case is distinguishable factually from the case relied on by plaintiff, *Frazier v. Hurd* (1968), 380 Mich 291. In that case one of the doctors assisted the other in performing an operation and was under his direction and control. No such indicia of an agency relationship were present in the instant case.

Affirmed, costs to defendants.

All concurred.